# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| THOMAS E. WHEELER, and<br>FITZGERALD FARMS, LLC;<br>on behalf of themselves and all others<br>similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>EXXON MOBIL CORPORATION and<br>EXXONMOBIL OIL CORPORATION,<br>including affiliated predecessors and<br>affiliated successors,<br><br>                Defendants. | ))))))))))))))))) | CIVIL ACTION<br><br>No. 19-4025-KHV |

## MEMORANDUM AND ORDER

On April 2, 2019, Thomas E. Wheeler and Fitzgerald Farms, LLC, on behalf of themselves and all other persons similarly situated, filed suit against Exxon Mobil Corporation and ExxonMobil Oil Corporation, along with their affiliated predecessors and successors (collectively, "defendants"). Plaintiffs' Original Complaint – Class Action (Doc. #1). Plaintiffs allege that defendants knowingly underpaid royalties on natural gas, and bring claims for breach of lease (Count 1), breach of fiduciary duty (Count 2) and fraud, constructive fraud and deceit (Count 3). This matter is before the Court on defendants' Motion To Dismiss Plaintiffs' Original Complaint (Doc. #10) filed April 23, 2019. For reasons stated below, the Court sustains defendants' motion.

### Factual Background

Highly summarized, plaintiffs' complaint alleges as follows:

Thomas Wheeler owns royalty interests pursuant to an oil and gas lease in the Perry Rowe

Unit located in Latimer County, Oklahoma, which Exxon Mobil Corporation[1] operates. Similarly, Fitzgerald Farms, LLC, owns royalty interests pursuant to an oil and gas lease in the Fitzgerald Unit located in Texas County, Oklahoma, which Exxon Mobil Corporation also operates. Defendants underpaid royalties on natural gas production to which plaintiffs were entitled. Defendants did so in a variety of ways, including taking improper deductions, not paying royalties on all constituents found in the gas and not paying royalties on the full volume of gas.

Plaintiffs assert breach of lease (Count 1), breach of fiduciary duty (Count 2) and fraud, constructive fraud and deceit (Count 3). Plaintiffs seek to recover on their own behalf and on behalf of two putative classes. The first putative class ("the Class") is a multi-state class that seeks to recover royalties associated with gas obtained from the leased premises. Plaintiffs define the Class as follows:

> All last successors in interest to royalty owners in wells where Defendants (including their affiliated predecessors and affiliated successors) were the operator (or a working interest owner who marketed its share of gas and directly paid royalties to the royalty owners), payable under any lease that contains an express provision stating that royalty will be paid on gas used off the lease premises (Express Fuel Clause). These Class claims relate to royalty payments for gas and its constituents (such as residue gas, natural gas liquids, helium, nitrogen, or drip condensate).

Plaintiffs' Original Complaint – Class Action (Doc. #1) ¶ 13. The second putative class ("the Subclass") consists of Oklahoma royalty interest owners who seek to recover underpaid royalties prior to April 30, 2002. Plaintiffs define the Subclass as follows:

> All last successors in interest to royalty owners in Oklahoma wells where Defendants (including their affiliated predecessors and affiliated successors) were the operator (or a working interest owner who marketed its share of gas and directly paid royalties to the royalty owners) from inception to April 30, 2002. The Subclass claims relate to royalty payments for gas and its constituents (such as residue gas, natural gas liquids, helium, nitrogen, or drip condensate).

---

[1] Exxon Mobil Corporation and the other named defendant, ExxonMobil Oil Corporation, are related entities, with Exxon Oil operating as a subsidiary.

Id.

On April 23, 2019, defendants filed their Motion To Dismiss Plaintiffs' Original Complaint (Doc. #10), seeking dismissal of all claims.[2] Specifically, defendants first argue that the Court should dismiss all claims against unidentified defendants and all claims that seek to hold named defendants liable for the actions of unidentified predecessors and successors. Second, defendants argue that the applicable statutes of limitation bar plaintiffs' claims. Third, defendants argue that the Court should dismiss plaintiffs' breach of lease claims (Count 1) because plaintiffs have not sufficiently alleged the existence of specific leases between them. Fourth, defendants assert that the Court should dismiss the breach of fiduciary claims (Count 2) because defendants do not owe such a duty under Oklahoma law. Finally, defendants argue that the Court should dismiss plaintiffs' fraud, constructive fraud and deceit claims (Count 3) because the complaint fails to satisfy the heightened pleading requirements under Fed. R. Civ. P. 9(b). Because the Court dismisses the complaint on other grounds, it does not address the statute of limitations issue.

**Legal Standards**

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id. at 679-80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To determine whether a complaint states a plausible claim for relief, the Court draws on

---

[2] For the purposes of this motion, the Court will only consider plaintiffs' claims, and not those of the putative classes. If plaintiffs do not have viable claims, they cannot represent the Class or Subclass on those claims. See Jenkins v. CARCO Grp., Inc., 339 F. Supp. 3d 1223, 1231 (D. Kan. 2018) (dismissing putative class claims because plaintiff's claims dismissed).

its judicial experience and common sense. Iqbal, 556 U.S. at 679. Plaintiffs make a facially plausible claim when they plead factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Id. at 678. However, plaintiffs must show more than a sheer possibility that defendants have acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleaders are entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008).

The Court need not accept as true those allegations which state only legal conclusions. See Iqbal, 556 U.S. at 678; Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Rather, plaintiffs bear the burden of framing their complaint with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. Twombly, 550 U.S. at 556. A pleading that offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678.

## Analysis

### I. Choice of Law

A federal court sitting in diversity applies federal procedural law and the substantive law that the forum state would apply. Sylvia v. Wisler, No. 13-02534-EFM, 2019 WL 1384296, at *2 (D. Kan. Mar. 27, 2019); see also Burnham v. Humphrey Hosp. Reit Trust, Inc., 403 F.3d 709, 712 (10th Cir. 2005). For the purposes of diversity jurisdiction, choice-of-law rules are substantive.

Sylvia, 2019 WL 1384296, at *2. Because it is based on diversity, this also applies to actions brought under the Class Action Fairness Act ("CAFA"). See Speed v. JMA Energy Co., LLC, 872 F.3d 1122, 1126 (10th Cir. 2017) (CAFA expands federal diversity jurisdiction); see also Savedoff v. Access Group, Inc., 524 F.3d 754, 760 n.5, 762 (6th Cir. 2008) (applying forum state's choice of law provisions where federal jurisdiction premised on 28 U.S.C. § 1332(d)(2)(A)). Therefore, because plaintiffs brought this action under CAFA, Kansas choice-of-law rules apply. Under these rules, the Court applies the *lex rei sitae* doctrine, or the law of the place where the property is situated, to "resolve disputes regarding the payment of royalties on oil and gas leasehold interests." Farrar v. Mobil Oil Corp., 43 Kan. App. 2d 871, 880, 234 P.3d 19, 26 (2010). Here, plaintiffs' claims are based on wells located in Oklahoma. Therefore, the Court will apply Oklahoma law.

## II. Unnamed Defendants

Defendants assert that the Court should dismiss (1) all claims against unnamed defendants, and (2) all claims that seek to hold named defendants liable for the actions of unidentified predecessors and successors.

Defendants first argue that the Court should dismiss all claims against unnamed defendants. They point to the caption and introductory paragraph of the complaint, which cite as additional defendants their "affiliated predecessors and affiliated successors." The complaint then offers an expansive definition of "Defendants":

> Defendants and their affiliated predecessors, successors, and current and past employees, agents, representatives, attorneys, or others acting on their behalf and all those to whose prior leasehold interests they have succeeded and for whom they are legally liable whether by merger, assignment, or otherwise[.]

Plaintiffs' Original Complaint – Class Action (Doc. #1) ¶ 11. Defendants argue that this allegation violates Fed. R. Civ. P. (10)(a), which requires the "title of the complaint [to] name all the parties." See Murrah v. EOG Resources, No. 10-994-M, 2011 WL 227652, at *1-2 (W.D. Okla. Jan. 21,

2011) (dismissing claims against unnamed predecessors and successors); see also Hitch Enterprises v. Cimarex Energy, No. 11-13-W, 2011 WL 13113326, at *1 (W.D. Okla. Mar. 15, 2011) (same); Cecil v. BP Am. Prod. Co., No. CIV-16-410-RAW, 2017 WL 2987174, at *4 (E.D. Okla. Mar. 20, 2017) (same). Plaintiffs do not contest this point, but focus on the consequences of the violation, suggesting various ways in which the Court could deal with unnamed defendants. Plaintiffs' Response To Defendants' Motion To Dismiss And Memorandum In Support (Doc. #30) at 14-15. Because including the unnamed defendants violates Rule 10(a), however, the Court dismisses all claims against them. See Murrah, 2011 WL 227652, at *1-2 (dismissing without prejudice and granting leave to amend); see also Hitch, 2011 WL 13113326, at *1 (same); Cecil, 2017 WL 2987174, at *4 (granting leave to amend).

Named defendants next assert that the Court should dismiss all claims that seek to hold them liable for the actions of unidentified predecessors and successors. Plaintiffs do not respond to this argument. To satisfy Twombly and Iqbal, plaintiffs must allege facts, rather than mere conclusory recitals, that plausibly establish that defendants are liable for the actions of unidentified persons and entities. See Murrah, 2011 WL 227652, at *2 (dismissing claims that sought to hold named defendants liable for actions of unnamed defendants); see also Hitch, 2011 WL 13113326, at *2-3 (same). Under Oklahoma law, when one company sells or otherwise transfers its assets to another company, the successor is generally not liable for the debts and liabilities of the seller. Murrah, 2011 WL 227652, at *2 (citing Crutchfield v. Marine Power Engine Co., 209 P.3d 295, 300 (Okla. 2009)). The four exceptions to this rule are as follows: (1) when the successor agrees to assume such debts or liabilities, (2) when the corporations consolidate or merge, (3) when the transaction was fraudulent in fact or (4) when the purchasing corporation is a mere continuation of the selling company. Id. (citing Crutchfield, 209 P.3d at 300). Plaintiffs do not allege facts that

plausibly satisfy any of these exceptions, nor do they address the issue in their response to defendants' motion. Therefore, the Court dismisses all claims which seek to hold the two named defendants liable for the actions of unidentified entities. See id.; see also Hitch, 2011 WL 13113326, at *2-3.

**III.     Breach of Lease Claim (Count 1)**

Defendants assert that the Court should dismiss plaintiffs' breach of lease claim because plaintiffs have not sufficiently alleged the existence of specific leases between them. To prevail on breach of contract claim under Oklahoma law, plaintiffs must prove that a contract exists, and that plaintiffs and defendants are parties to that contract. See Hitch Enterprises, Inc. v. Cimarex Energy Co., 859 F. Supp. 2d 1249, 1257 (W.D. Okla. 2012); see also Erikson v. BP Expl. & Prod. Inc., 567 F. App'x 637, 639 (10th Cir. 2014) (dismissing breach of fuel lease claim because plaintiff failed to plead facts that created reasonable inference that contract existed between parties).

Defendants assert that plaintiffs have not plausibly established the existence of a contract to which defendants and plaintiffs are parties. Specifically, defendants argue that plaintiffs have not attached to their complaint the purported leases or provided enough information to identify these leases. In support, defendants cite Chieftain Royalty Co. v. Dominion Oklahoma Texas Expl. & Prod., Inc., No. 11-344-R, 2011 WL 9527717, at *2 (W.D. Okla. July 14, 2011), a fuel lease case that established a test to determine whether plaintiffs had plausibly shown the existence of such a lease. To satisfy this test, plaintiffs must (1) attach, identify or describe the individual lease under which defendants are the lessees or successor lessees and (2) describe the terms in that lease. Id. at *2 (dismissing plaintiffs' claim alleging breach of fuel lease because complaint failed to sufficiently identify leases between plaintiffs and defendants). Since Chieftain, courts in the

Tenth Circuit have applied this test to dismiss claims for breach of fuel leases where the complaint fails to adequately identify the leases. See Hitch, 859 F. Supp. 2d at 1257 (dismissing breach of fuel lease claim because plaintiffs failed to sufficiently allege existence of lease between parties); see also Anderson Living Tr. v. XTO Energy, Inc., No. 11-0959 JCH/LFG, 2013 WL 12241198, at *2 (D.N.M. Mar. 28, 2013) (citing Hitch, 859 F. Supp. 2d at 1257) (same); see also Anderson Living Tr. v. Energen Res. Corp., No. 12-0352 JCH/KBM, 2013 WL 12182932, at *3 (D.N.M. Mar. 21, 2013) (same).

In response, plaintiffs argue that Twombly and Iqbal do not require them to attach to their complaint their leases with defendants. In support, plaintiffs cite two cases in which the Western District the Oklahoma declined to dismiss breach of lease claims even though the plaintiffs did not attach the leases. See Harris v. Chevron U.S.A., Inc., No. 15-94-C, 2015 WL 3746989, at *2 (W.D. Okla. June 15, 2015) (no requirement that plaintiff attach copy of document to survive motion to dismiss); see also Cecil v. BP Am. Prod. Co., No. 16-410-RAW, 2017 WL 2987174, at *3 (Mar. 20, 2017) (same).

Plaintiffs miss the point. The complaint must allege facts which plausibly show the existence of a contract; while attaching the lease is one way plaintiffs can satisfy this standard, it is not the only way. As the fuel cases clearly explain, plaintiffs have the option to verbally identify or describe their leases with defendants. Chieftain Royalty Co., 2011 WL 9527717, at *2; Hitch, 859 F. Supp. 2d at 1257; Anderson Living Tr., 2013 WL 12241198, at *2; Anderson Living Tr., 2013 WL 12182932, at *3; Harris, 2015 WL 3746989, at *2; Cecil, 2017 WL 2987174, at *3.

Here, plaintiffs have not alleged facts sufficient to plausibly establish leases between themselves and defendants. First, the complaint does not plausibly allege that Wheeler and defendants are parties to the alleged Latimer County lease. The complaint alleges that Wheeler

-8-

"entered into [a] written, fully executed oil and gas lease[] with Defendants." Plaintiffs' Original Complaint – Class Action (Doc. #1) ¶ 69. Clearly, this conclusory allegation alone does not satisfy Twombly and Iqbal. The other facts alleged in the complaint do not improve plaintiffs' claim. Plaintiffs attach what they allege is a royalty provision in their purported lease with defendants. Id. ¶ 5. However, the provision does not identify defendants as lessee, nor does it identify *any* lessee for that matter. In fact, the lease provision does not even identify plaintiffs as the lessors. As a result, the provision exists merely as a boilerplate fuel lease provision that could have come from anywhere and involve anyone. It does nothing to show the existence of a lease between Wheeler and defendants.

The complaint's ambiguous allegation that Wheeler owns royalty interests under a lease "in Defendant Exxon Mobil Corporation's operated unit" does not improve plaintiffs' claim. Id. ¶ 4. Most importantly, the allegation does not assert that Wheeler and defendants are parties to the lease. While it asserts that the lease is in defendants' "possession," and that defendants operate the unit (Perry Rowe Unit in Latimer County, Oklahoma), both assertions stop short of claiming that defendants are actually parties to the lease. Although the complaint elsewhere asserts that Wheeler "entered into [a] written, fully executed oil and gas lease[] with Defendants," it does not describe the lease to which plaintiffs are referring, let alone identify the Latimer County lease in particular. These allegations do not plausibly establish that defendants are parties to the Latimer County lease.[3]

---

[3] The complaint that the court dismissed in Hitch suffered from the same defect. Like plaintiffs here, plaintiffs in Hitch alleged that they had royalty interests in certain wells, that defendant operated the wells and possessed the relevant leases, and that they "entered into written, fully executed, oil and gas leases with [d]efendants." Hitch, 859 F. Supp. 2d at 1256.

The claims regarding the Fitzgerald Farms lease in Texas County fail for the same reasons. The complaint makes a conclusory allegation that Fitzgerald Farms "entered into [a] written, fully executed oil and gas lease[] with Defendants." Plaintiffs' Original Complaint – Class Action (Doc. #1) ¶ 69. The complaint then attaches a boilerplate fuel lease provision that does not identify either the lessor or the lessee, and makes the same ambiguous assertion that Fitzgerald Farms owns royalty interests under a lease "in Defendant Exxon Mobil Corporation's operated unit." Id. ¶ 6. While this alleges that the lease is in defendants' *possession*, and that defendants *operate* the unit, it again stops short of alleging that defendants are actually parties to the lease. These allegations do not plausibly establish that defendants are parties to the Texas County lease. See Hitch, 859 F. Supp. 2d at 1256.

Supposedly "to alleviate any concern," plaintiffs attach leases to their reply to the motion to dismiss. Plaintiffs' Response To Defendants' Motion To Dismiss And Memorandum In Support (Doc. #30) at 10. Rather than curing the issue, the leases that plaintiffs attach only further highlight the defect in their complaint: the allegations do not show that plaintiffs and defendants are parties to any lease. First, the purported Latimer County lease does not show that Thomas Wheeler is the lessor. The lease lists "Virgil C. Wheeler" as the lessor. Moreover, nothing in the complaint supports an inference that Thomas Wheeler succeeded Virgil Wheeler as lessor, and plaintiffs do not allege that he did. Without further discussion, they merely present the Virgil Wheeler lease from 1960. Plaintiffs attempt the same strategy by attaching the Texas County lease. The lease does not mention Fitzgerald Farms, and instead lists E.J. Fitzgerald and Frances L. Fitzgerald as lessors. Nothing in the complaint alleges that Fitzgerald Farms succeeded as lessor.

Courts in other fuel lease cases have consistently rejected attempts like these to attach leases which "d[o] not reveal any connection between" plaintiff and defendant. See Hitch, 859 F.

Supp. 2d at 1257 (attached oil and gas leases did not show that plaintiff and defendant were parties to lease); see also Anderson Living Tr., 2013 WL 12241198, at *2 (same). The fact that plaintiffs happen to share names with the lessors identified in the leases is an amateurish effort to cure this defect. See Anderson Living Tr., 2013 WL 12241198, at *2 (no facts to show plaintiff is party to lease even though plaintiff shares name with lessors listed in lease). As a result, the complaint fails to plausibly establish the existence of any lease to which plaintiffs and defendants are parties. Therefore, the Court dismisses the breach of lease claims under Count 1.

## IV.     **Breach of Fiduciary Duty (Count 2)**

Defendants assert that that Court should dismiss the breach of fiduciary duty claims because defendants do not owe plaintiffs any fiduciary duty under 52 Okl. St. Ann. § 902.[4] Section 902 governs whether a party owes a fiduciary duty "relating to the exploration for, operations for, producing of, or marketing oil and gas, or distributing proceeds of production of oil and gas." This statute expressly limits the instances in which such a duty exists. Under Section 902(2), a party generally does not owe a fiduciary duty relating to any "private agreement, statute or governmental

---

[4] Defendants also argue that the Court should dismiss the breach of fiduciary duty claim because the complaint does not specifically allege that defendants breached a duty to *plaintiffs*, but instead refers only to the putative class members. Defendants point to Count 2 of the complaint, which alleges that "Subclass members and Class members" have interests in Oklahoma wells, that defendants breached their fiduciary duty to "Subclass members and Class members" and that "Subclass members and Class members" are entitled to recover actual damages. Plaintiffs' Original Complaint – Class Action (Doc. #1) ¶ 74, 77, 78. Plaintiffs acknowledge this "one-off phrasing inconsistency," but argue that it "has no substantive consequence on the breach of fiduciary duty claim." Plaintiffs' Response To Defendants' Motion To Dismiss And Memorandum In Support (Doc. #30) at 24. The Court agrees. After asserting earlier in the complaint that each plaintiff has interests in the individual units, Count 2 then alleges that "a fiduciary duty was created and vested" when defendants "received unitization orders." Plaintiffs' Original Complaint – Class Action (Doc. #1) ¶ 75. While it acknowledges that plaintiffs could have drafted the complaint more clearly, the Court finds that the complaint sufficiently alleges plaintiffs' cause of action under Count 2. See Cecil, 2017 WL 2987174, at *3 (motion to dismiss fiduciary duty claims denied despite nearly identical allegations in complaint).

order or common law" relating to oil and gas. See Gagnon v. Merit Energy Co., LLC, No. 14-0832-PAB, 2015 WL 1326626, at *5 (D. Colo. Mar. 19, 2015). Section 902 explicitly creates an exception for field-wide oil and gas units established under 52 Okla. Stat. tit. § 287.1. Accordingly, an operator of a Section 287.1 unit owes a fiduciary duty to holders of royalty interests. Id. By contrast, Section 902 does not create an exception for drilling and spacing units established under 52 Okla. Stat. tit. § 87.1. Under Section 87.1, the Oklahoma Corporate Commission can establish drilling and spacing units by government order. Because Section 902 does not create an exception for these orders, an operator of a Section 87.1 unit does not owe a fiduciary duty to holders of royalty interests.

Here, plaintiffs apparently allege that their claims involve both Section 287.1 units and Section 87.1 units. Their complaint alleges that the relevant wells "have been unitized under 52 OKLA.STAT. tit. §§ 287.1-287.15 and/or 52 OKLA.STAT. tit. § 87.1." Plaintiffs' Original Complaint – Class Action (Doc. #1) ¶ 74. However, plaintiffs then specify that they "trace [defendants'] fiduciary duty to Oklahoma drilling and spacing orders." Response To Motion To Dismiss (Doc. #30) at 23. "Drilling and spacing orders" fall under Section 87.1, and are distinct from field-wide units under Section 287.1. Thus, the Court will assume that plaintiffs base their claims on Section 87.1 units.

Section 902 became effective on May 8, 2012. See 2012 Okla. Sess. Law Serv. Ch. 201, § 5 (H.B.2654). Accordingly, after this date, operators of Section 87.1 units do not owe a fiduciary duty to holders of royalty interests. See Gagnon, 2015 WL 1326626, at *5 (dismissing claims for breach of fiduciary duty with respect to period after May 8, 2012). Here, plaintiffs' complaint does not allege that their fiduciary claims accrued prior to May 8, 2012. Indeed, the complaint does not mention when their fiduciary claims accrued at all. As a result, plaintiffs have failed to

adequately allege a fiduciary claim under Section 902. Plaintiffs apparently concede that Section 902 bars their claims, arguing only that it "is not at issue here for the Subclass because its class predates the statute." Plaintiffs' Response To Defendants' Motion To Dismiss And Memorandum In Support (Doc. #30) at 24 n.30. However, because plaintiffs do not have a viable fiduciary claim, they cannot represent the Class or Subclass on such a claim. See Jenkins, 339 F. Supp. 3d at 1231 (dismissing putative class claims because plaintiff's claims dismissed). Accordingly, the Court dismisses the breach of fiduciary duty claims under Count 2.

## V. Fraud, Deceit and Constructive Fraud (Count 3)

Defendants assert that the Court should dismiss plaintiffs' claims of fraud, deceit and constructive fraud because the allegations in the complaint do not satisfy the heightened pleading requirements under Fed. R. Civ. P. 9(b). To state a claim for fraud, plaintiffs must allege "that the defendant made a material representation that was false, that he knew when he made the representation that it was false, . . . that he made it with the intention that it should be acted upon by plaintiff, and that plaintiff acted in reliance upon it and thereby suffered detriment." Cecil, 2017 WL 2987174, at *3 (citing Silk v. Phillips Petroleum Co., 760 P.2d 174, 176–77 (Okla. 1988)). While actual fraud is the "intentional misrepresentation of concealment of a material fact which substantially affects another person," constructive fraud involves the "breach of either a legal or equitable duty." Id. (citing Hitch, 859 F.Supp.2d at 1259). Claims for both fraud and constructive fraud require detrimental reliance by plaintiffs. Id. To sufficiently plead reliance under Rule 9(b), plaintiffs must allege with particularity the "consequences" of defendants' false statements. Parrish v. Arvest Bank, 717 F. App'x 756, 762 (10th Cir. 2017) (citing Koch, 203 F.3d at 1236); see also George v. Urban Settlement Serv., 833 F.3d 1242, 1256 (10th Cir. 2016)

(allegations "identify[ing] the actions the plaintiffs took in reliance on [the] misrepresentations, [and] detail[ing] the injuries they suffered as a result" sufficient to satisfy Rule 9(b)).

Here, plaintiffs have not sufficiently pleaded reliance under Rule 9(b). The complaint alleges that "Plaintiffs and the Class and Subclass Members did rely on and/or are legally presumed to have relied upon these uniform written representations as being truthful and accurate." Plaintiffs' Original Complaint – Class Action (Doc. #1) at ¶ 82. This conclusory allegation alone is clearly insufficient to satisfy Rule 9(b). Moreover, in response to defendants' motion, plaintiffs point to four additional allegations that they argue more specifically describe their reliance: (1) plaintiffs "had to rely solely on accounting information they received from" defendants, Id. ¶¶ 59, 82, 86, (2) defendants hid from plaintiffs "all of the accounting information that would show the starting price of gas products, what amounts had been deducted from that price, and why those deductions had been taken," Id. ¶¶ 32-33, 59-66, 86, (3) defendants intended plaintiffs to rely on the royalty check stubs and plaintiffs did so, Id. ¶ 86 and (4) because defendants had all of the information, plaintiffs had no alternative but to believe the information which they received from defendants, Id. ¶¶ 82, 84-90. None of these allegations even remotely identify, let alone with particularity, the actions which plaintiffs took as a consequence of defendants' alleged false statements. Claim 2 does not allege what *plaintiffs* did as a result of defendants' alleged false statements, but merely describes *defendants'* conduct. Moreover, claims 1, 3 and 4 simply restate the reliance element in conclusory fashion.

Plaintiffs argue that the Court should nonetheless "infer" reliance based on the complaint. Plaintiffs' Response To Defendants' Motion To Dismiss And Memorandum In Support (Doc. #30) at 19. Specifically, they assert that the Court can infer reliance because the royalty owners cashed the checks as if they included proper payment. Id. The complaint does not actually include this

allegation.[5]  Because the existing allegations do not satisfy Rule 9(b)'s pleading requirements, the Court dismisses the fraud, deceit and constructive fraud claims under Count 3.

**IT IS THEREFORE ORDERED** that defendants' Motion To Dismiss Plaintiffs' Original Complaint (Doc. #10) filed April 23, 2019 is **SUSTAINED**.  Plaintiffs' Original Complaint – Class Action (Doc. #1) filed April 2, 2019, is **DISMISSED without prejudice**.[6]

Dated this 15th day of October, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[5]  The same issue arose in Hitch. 859 F. Supp. 2d at 1260.  In that case, the court dismissed fraud claims that were based on a nearly identical conclusory allegation that "[p]laintiffs did rely on and/or are legally presumed to have relied upon these uniform written representations as being truthful and accurate, when they were not. . . ."  Id. (rejecting allegation as "conclusory and lacking factual specificity").  In doing so, the court also declined to "infer" reliance as plaintiffs suggested, explaining that "[a]llegations are not entitled to be assumed to be true when they merely restate the essential elements of a claim rather than provide specific facts to support those elements."  Id.  However, after the court's dismissal, plaintiffs amended their complaint to include the allegation that they relied on defendants' misrepresentations by (1) cashing royalty checks and (2) not challenging the amounts of the royalty payments.  Hitch, 2012 WL 12863013, at *6-7.  The court found that these amended allegations were sufficient to satisfy the requirements for pleading reliance.

[6]  Defendants ask the Court to dismiss plaintiffs' complaint with prejudice, but provide no reasoned explanation or authority for their position.  Accordingly, this dismissal is without prejudice.